# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WSPR ENTERPRISE LLC,

               Plaintiff,

v.

TOWN OF SPRING PRAIRIE, TOM
BOLFERT, LYNN LEIN, DON
TRIMBERGER, II, and WALWORTH
COUNTY,

               Defendants.

Case No. 20-CV-1421-JPS

**ORDER**

Plaintiff is a company that owns three parcels of agriculturally zoned land in the Town of Spring Prairie, Wisconsin. In 2019, Plaintiff wished to lease those parcels to its agent, Asphalt Contractors, Inc ("ACI"),[1] so that ACI could mine for gravel and set up a washing plant. The only catch: ACI would need to request a change in zoning from agricultural to industrial use. The Town of Spring Prairie (the "Town") denied the rezoning petition, and this lawsuit followed.

Plaintiff initially sued the Town, Walworth County (the "County"), and three supervisors from the Town's Board of Supervisors, Tom Bolfert ("Bolfert"), Lynn Lein ("Lein"), and Don Trimberger, II ("Trimberger") (the "Supervisor Defendants") (collectively, the "Defendants"). The cast of defendants in Plaintiff's proposed amended complaint includes the Defendants, as well as the Town Board of Supervisors (the "Town Board"),

---

[1]The Court will refer to ACI and Plaintiff interchangeably.

the County Zoning Agency, and the County Board of Supervisors (the "County Board").

Defendants submitted motions for judgment on the pleadings, (Docket #23, #32), which Plaintiff opposed, (Docket #35, #39), and attempted to address via a motion for leave to file an amended complaint, (Docket #34), which Defendants also opposed. For the reasons explained below, the Court will deny Plaintiff's motion to amend, grant the earlier motions for judgment on the pleadings, and dismiss the case. The motion to stay discovery pending the outcome of the dispositive motions, (Docket #27), will be denied as moot.

## 1. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts favor granting leave to amend, but they act within their discretion to deny such leave when there is a substantial reason to do so. *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1216 (E.D. Wis. 1993). Such reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment," or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002).

An amendment is futile when "the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004). In this way, the "standard is the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Gen. Elec.*

*Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The posture of this case is somewhat unique. Plaintiff has endeavored to respond to the parties' Rule 12(c) motions on their merits, and, amidst that briefing, also filed a motion to amend the complaint to cure any pleading deficiencies.[2] The parties have briefed their arguments on the motion to amend with reference to their arguments in the motions for judgment on the pleadings. A motion for judgment on the pleadings is "governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014) (citations omitted). Because Rule 15 asks courts to consider the futility of an amendment, which uses the same standard as a motion to dismiss or a motion for judgment on the pleadings, the Court will evaluate the amended complaint with reference to the motions for judgment on the pleadings to determine whether, even in its improved form, the complaint manages to state valid claims. *See Crestview Vill. Apartments*, 383 F.3d at 558

---

[2]While the amended complaint includes new defendants, it does not contain any additional causes of action. Most of the additional facts alleged in the amended complaint relate to Lein, who, Plaintiff contends, had a conflict of interest with its gravel pit initiatives. *See* (Docket #34-1 ¶¶ 23–29, 37, 39–40, 47). This appears to be an attempt to bolster the equal protection and substantive due process claims.

(explaining that a court "may deny leave to amend if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.") (citations and quotations omitted). The ultimate decision to grant the motions for judgment on the pleadings and dismiss the federal claims with prejudice reflects the Court's assessment that Plaintiff has "fail[ed] to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) (upholding a dismissal with prejudice for failure to state a claim).

**2.      RELEVANT FACTS**

Plaintiff owns three plots of land in Spring Prairie, Wisconsin that are zoned for agricultural use. In 2019, Plaintiff leased the plots to its agent, ACI, which intended to mine the plots for nonmetallic minerals. The lease acknowledged that ACI would obtain necessary permits and zoning and undertake "all restoration as may be required by law." (Docket #34-1 at 18). Shortly after executing the lease, ACI sought to rezone the plots for industrial use and obtain a conditional use permit ("CUP") to allow a nonmetallic mining operation (a "gravel pit") and a washing plant onsite.

ACI's first effort to rezone one parcel met opposition from the Town, which quickly created a "No-Pit" interest group containing at least forty people. Lein, one of the Town Board Supervisors, helped organize the No-Pit activists. She had an unknown and never defined "business association" with Scott Wilson ("Wilson"), who owned one of the other gravel pits in town. A year earlier, before Lein joined the board, the Town Board had granted Wilson's request to continue and expand his gravel pit operation.

ACI presented its first plans for the gravel pit at a public meeting, where it also fielded questions. The initiative proved unpopular.

Eventually, ACI abandoned its plans for the first parcel and sought to rezone a second, smaller parcel instead. The purpose for the rezoning, however, was the same: Plaintiff would lease the land to ACI to mine gravel and run a washing plant.

Again, ACI met with opposition. Despite its carefully prepared rezoning petition, CUP application, reclamation plan, and twenty-two pages of additional analyses by its engineering consultants, the townspeople were not enthusiastic. Plaintiff cites several communications from townspeople to Lein in which they express dissatisfaction and opposition to the proposal. For example, one townsperson writes, "[l]et's face it, even if the Contractor would submit a stellar 'Plan', [sic] it would still be unacceptable to us because we simply do not want the Pit under any circumstances." (*Id.* ¶ 39).

Based on the amended complaint, the Court gleans that the causes for concern were an increase in truck traffic, noise, and dust pollution; a potential decrease in property values; and possible long-term, unavoidable environmental effects. (*Id.* ¶¶ 25, 30, 42).[3] Plaintiff states that these concerns were "speculative," based on "misinformation," or otherwise adequately addressed in the plans and reports compiled by Plaintiff's consultants. (*Id.*) At one point after it had submitted its petition, application, soil reclamation plan, and various addenda, Plaintiff sought to provide the Town Board

---

[3]The original complaint also contained allegations about public concerns for the environment and property values. (Docket #1 ¶¶ 16, 24, 25). Since the amended complaint reflects Plaintiff's best efforts to state a claim with the benefit of Defendants' judgment on the pleadings arguments, the Court has focused its analysis on the amended complaint; however, the original complaint is also deficient.

with additional analyses regarding the effects on surrounding property values. The Town Board declined to consider these additional submissions.

On January 16, 2020, the Town Board's Planning and Zoning Commission (the "Commission") held a public meeting at which Plaintiff presented its proposal and the No-Pit activists made statements in opposition. After a hearing, the Commission approved the rezoning petition and CUP application. Nevertheless, the Town Board voted unanimously to disapprove the rezoning petition and CUP. Plaintiff states that this decision was based on "speculative and unsupported assertions of fact." (*Id.* ¶ 53). Plaintiff declines to say what these facts were. Incidentally, Plaintiff also characterizes concerns over traffic, noise, and dust pollution as "speculative." (*See id.* ¶ 25).

The same day that it voted against the gravel pit petition and CUP application, the Town Board passed a resolution to make it more difficult to obtain permits for non-metallic mining operations such as gravel pits. This appears to have been directly in response to Plaintiff's gravel pit proposal: Bolfert stated, "[y]ou cannot legislate against a gravel pit, but you can control how you deal with approving or not approving them." (*Id.* ¶ 46). However, neither the amended complaint nor the original complaint alleges that Plaintiff's rezoning petition and CUP application were subject to this new ordinance. Nor do the complaints allege that any new gravel pit endeavor would not be subject to the ordinance—it appears to apply equally to all proposed gravel pits.

Pursuant to Wisconsin state law, after voting to oppose the rezoning petition and CUP application, the Town Board adopted a resolution disapproving it. The permit and CUP application then went to the County Zoning Agency, which held a public hearing and heard testimony in

support of and against the gravel pit. Notwithstanding the Town Board's resolution, the County Zoning Agency had the ability to approve the petition and CUP application subject to changes. At the hearing, the County Zoning Agency members appeared to be in favor of the gravel pit, so much so that one member said he had no suggestions for how it could be changed. Nevertheless, the County Zoning Agency ultimately voted to recommend disapproval of the petition and CUP application, in part due to a concern that the reclamation efforts would be insufficient to restore the quality of the soil. (*Id.* ¶ 66).

The rezoning petition and CUP application then went to the County Board for review. The County Board had the power to approve the petition and application outright, but Plaintiff alleges that "on information and belief," it denied them based on the recommendation of the County Zoning Agency and the opposition of the Town Board.

3.    **ANALYSIS**

    3.1    **Fourteenth Amendment – Equal Protection Clause**

In cases not involving a suspect classification, to state a claim under the Equal Protection Clause (the "EPC") of the Fourteenth Amendment, a plaintiff must allege that it was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Typically, a claim will include allegations "that a defendant has either a personal financial stake or some history with the plaintiff, and that this stake or history demonstrates both the lack of a rational basis for the action and animus." *Frederickson v. Landeros*, 943 F.3d 1054, 1062 (7th Cir. 2019). "The classic class-of-one claim is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper

motive . . . comes down hard on a hapless private citizen." *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (quotations omitted) (finding clear animus where next-door neighbor, and elected mayor, abused his power by, among other actions, initiating baseless prosecution and telling builders that the plaintiffs were drug dealers in order to impede their renovation efforts); *Forseth v. Village of Sussex*, 199 F.3d 363, 371 (7th Cir. 2000) (approving EPC claim where an official conditioned approval of a plat on the applicant selling him part of the land at a heavily discounted price and where the town allowed storm run-off to improperly accumulate on the subject property, thereby decreasing its buildable area). However, if there is "a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn, LLC v. Ind. Dep't. of Fin. Inst.*, 755 F.3d 839, 845 (7th Cir. 2014).

As Plaintiff's amended complaint makes clear, the new gravel pits were terribly unpopular among the citizens of Spring Prairie, who formed activist groups in opposition and made their grievances known at public meetings. (Docket #34-1 ¶¶ 16–17, 24–29, 39, 40, 47). Plaintiff has somehow obtained communications between Lein and her constituents and included these communications in the amended complaint, (indeed, these communications comprise most of the additions to the complaint) but to no availing effect. These communications demonstrate that, while Lein was very active in coordinating the efforts against Plaintiff, she was responding to the unmistakable disapproval of her fellow townspeople. (*See*, *e.g.*, *id.* ¶ 39) (Lein received an email from a townsperson who said, "Let's face it, even if the Contractor would submit a stellar 'Plan', [sic] it would still be unacceptable to us because we simply do not want the Pit under any circumstances.").

This is a rational reason for the Town Board to reject the mining endeavor: the townspeople, who live in an agricultural area, simply did not want it. Presumably, another gravel pit would change the tenor of the place where these townspeople had chosen to build their lives, and, under a democratic society, the townspeople have a voice in determining what happens. The Town Board, which is representative of the townspeople, thus voted against it.

But this is not the only rationale for rejecting the pits that is evident from the complaints. There were "public concerns" about the project as well, including concerns for environmental effects that could be "minimize[d]" but perhaps not completely avoided, (*id.* ¶ 30), as well as concerns over the effect that the additional pit might have on property values, (*id.* ¶ 42).[4] Plaintiff complains that the Town Board rejected the rezoning petition based on "speculative and unsupported assertions of fact," (*id.* ¶ 53), but this is also how Plaintiff characterized the townspeople's concerns that "truck traffic, no[i]se, and dust generated by the proposed non-metallic mining operation would be detrimental to Town residents" in the amended complaint, (*id.* ¶ 25). According to the complaints, by 2019, the Town had already seen the construction, implementation, continuation, and expansion of at least one gravel pit— their concerns about pollution, property values, and lasting environmental impacts cannot be so easily written off as speculative and unsupported. If there is no irrational action, the constitutional inquiry must end. *Flying J Inc.*

---

[4]As previously acknowledged, the allegations regarding public concerns, environmental impacts, and property values can be found in the original complaint. (Docket #1 ¶¶ 16, 24, 25). The allegations regarding truck traffic, noise, and dust are new to the amended complaint and further illuminate the Town's rational bases for rejecting the proposed pits.

*v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008) ("It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play.")

Plaintiff argues that it was irrational to deny its rezoning petition and CUP application but permit Wilson's pit to continue and expand. Essentially, Plaintiff contends that he is similarly situated to Wilson, who the Town Board permitted to continue with his gravel operation the year before (when Lein was not on the Town Board). Plaintiff alleges that Lein, a relative newcomer to the Town Board, had a "business association" with Wilson and, thus, a conflict of interest where Plaintiff's gravel pit was concerned. Plaintiff points to Lein's efforts with the No-Pit activist groups to demonstrate the scope of her conflict of interest.

There are several problems with this theory. First, the term "business association" could mean anything. It could mean that Lein and Wilson are in the same line of business, that Lein and Wilson worked at the same grocery co-op ten years ago, or that Lein owns a stake in Wilson's gravel company. It does not appear that the "business association" fell into, or anywhere near, the last category because, despite two complaints and several briefs on the issue, Plaintiff has not offered a single fact to suggest that Lein's "business association" with Wilson gave her a financial interest in the gravel pit. *Flying J Inc.*, 549 F.3d at 548 (affirming dismissal of an EPC claim against city officials who owned land adjacent to a proposed travel plaza where there was "no allegation that city officials sought any personal gain or conditioned any government action on such gain"). Perhaps Wilson might have stood to benefit from denying the gravel pit, but given the allegations in the complaints, that had nothing to do with Lein. There was

Case 2:20-cv-01421-JPS    Filed 03/21/22    Page 10 of 18    Document 42

no improper political animus that explains the difference in treatment between two ostensibly similarly situated people.

Second, and more fundamentally, there is a "presumption of rationality that attaches to government actions in a class of one equal protection case," which Plaintiff has not overcome. *Id.* at 547. As explained above, there were several obvious reasons for the Town Board to reject Plaintiff's pit proposal. Plaintiff has not come anywhere close to alleging that any of the Town's actions were irrational, and Plaintiff is even further from alleging that there were acts of animosity that "overcome the presumption of rationality." *Id*. This claim, therefore, will be dismissed with prejudice.

### 3.2    Fourteenth Amendment – Procedural Due Process

The Fourteenth Amendment prohibits state officials from depriving individuals of life, liberty, or property without due process of law. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). Such a claim requires Plaintiff to establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) the failure to employ constitutionally adequate procedures." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). Landowners are entitled to due process of law, but "the procedures 'due' in zoning cases are minimal." *River Park, Inc. v. Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994).

There is no question that Plaintiff has a cognizable property interest; the only question is what process was due. "[M]unicipalities need not use adjudicative procedures to make zoning decisions." *Id.* (citing *Coniston Corp. v. Hoffman Estates*, 844 F.2d 461, 467–68 (7th Cir. 1988)). Moreover, "the Constitution does not require state and local governments to adhere to their

Case 2:20-cv-01421-JPS   Filed 03/21/22   Page 11 of 18   Document 42

procedural promises." *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 248–51 (1983)).

"Procedural due process generally requires only 'notice and an opportunity to be heard.'" *Black Earth Meat Market v. Village of Black Earth*, 834 F.3d 841, 850 (7th Cir. 2016) (citations omitted) (finding no due process violation where a landowner "received notice and a hearing at every turn" and "spoke at length in support of his motion" at a town meeting). Here, Plaintiff received the following process: a public meeting before the Town Planning and Zoning Commission (two public meetings, if one counts the meeting for the first proposed pit); a unanimous vote by the Town Board; a near-unanimous adoption of the resolution against the pit pursuant to Wisconsin Statutes section 59.69(5)(e)4; review by the County Zoning Agency, which recommended disapproval due to concerns over soil reclamation;[5] and a vote by the County Board, which also denied the rezoning petition and CUP application. Aside from approval, what more could Plaintiff want?

Plaintiff's contention that the Town Board refused to accept its additional 30 pages of "comprehensive, systematic, and scientific analysis" (Docket #34-1 ¶ 41) regarding public concerns of the proposed pit does not make this a federal case. By the time the Town Board turned down Plaintiff's addenda, Plaintiff had already submitted a Section Rezone

---

[5] Contrary to Plaintiff's beliefs, the quality of soil on private property can be a matter for consideration of the public good. *See* Walworth Cnty. Ord. art. VI, § 26-261 *et seq*. (discussing required soil reclamation plans for nonmetallic mines); *see also* (Docket #34-1 at 16) (requiring reclamation and restoration of the land "so it is compatible with farming equipment to be tillable land for crops" pursuant to all "federal state, and local governmental laws, rules, and regulations covering reclamation and restoration.").

Case 2:20-cv-01421-JPS   Filed 03/21/22   Page 12 of 18   Document 42

Petition and a CUP application, which were "accompanied by a non-metallic mining reclamation plan and 22 pages of detailed drawings and plans describing" the operation, which were prepared by the same consultants who prepared the rejected addenda. Moreover, Plaintiff had presented the plan at public town meetings and had had ample opportunity to make arguments and field public concerns. It appears that, to the extent possible in an application for rezoning, Plaintiff "received notice and a hearing at every turn;" there were no constitutional violations in this process. *Black Earth Meats*, 834 F.3d at 850. This claim will also be dismissed with prejudice.

### 3.3 Fourteenth Amendment – Substantive Due Process

Substantive due process is a concept that has developed to protect against certain state actions regardless of the fairness of any procedural protections the plaintiff was afforded. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). It arises when state action infringes upon a fundamental liberty interest, *Reno v. Flores*, 507 U.S. 292, 302 (1993), or when state action is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Where zoning ordinances are concerned, a reviewing court employs only rational basis review, asking whether the action in question is rationally related to a legitimate state interest. *Id.*

As discussed in Section 3.1, *supra*, the amended complaint (and, equally, the original complaint) contains ample rational bases for the Town Board's denial of the rezoning petition, to wit: town consensus against rezoning additional agricultural areas for industrial use; a desire to avoid traffic, noise, and air pollution; fear of affecting neighboring land values; and concern for long-lasting and potentially unmitigable environmental

concerns. Any one of these, standing alone, would have been a rational basis for a group of representatives to reject the rezoning application and conditional use permit. *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008) (explaining that substantive due process is a "modest limitation that prohibits government action only when it is random and irrational").

### 3.4    Certiorari Review, Declaratory Judgment, and Wisconsin State Constitutional Claims

The parties also dispute whether any defendant's actions violate the Wisconsin state constitution and whether the Town acted within its state zoning authority such that certiorari review is appropriate under Wisconsin state law. The Court declines to exercise supplemental jurisdiction over the state constitutional claims, which are very poorly alleged (they are brought alongside the federal constitutional claims, as if the claims are one and the same) and which raise questions about pleading standards for state constitutional claims that are better resolved by a Wisconsin state court. *See* 28 U.S.C. § 1367(c)(3). Thus, those claims will be dismissed without prejudice.

The certiorari claim is equally poorly alleged and will be dismissed with prejudice. To the extent that Plaintiff seeks any declaratory judgment on this issue, the Court will deny the request. Under Wisconsin law, a person may challenge an agency or municipal governing body's decision by seeking judicial review. *State ex rel. Earney v. Buffalo Cnty. Bd. of Adjustment*, 885 N.W.2d 167, 170 (Wis. Ct. App. 2016). When a plaintiff seeks certiorari, courts are limited to considering

(1) whether the municipality kept within its jurisdiction;
(2) whether it proceeded on a correct theory of law;

(3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Oneida Seven Generations Corp. v. City of Green Bay*, 865 N.W.2d 162, 171–72 (Wis. 2015) (citation omitted). The municipality or agency decision must be based on "substantial evidence," which is "less than a preponderance of the evidence." *Id.* Additionally, "the weight to accord the evidence lies within the district of the municipality." *Id.* (citation omitted). This is, as Plaintiff points out, a fact-intensive inquiry, but, at the outset, there must be facts alleged that support the relief.

In its original complaint, Plaintiff brought the certiorari action against the Town Board, the Zoning Agency, and the County Board, alleging that they "exceeded their jurisdiction and acted contrary to law in a manner that was arbitrary, oppressive, or unreasonable on the facts presented to it." (Docket #1 ¶ 54). However, none of these three organizations were named as defendants in the original complaint. The amended complaint added the relevant defendants, but did not add any new, relevant allegations regarding how each entity exceeded its jurisdiction.[6] *See AllEnergy Corp. v. Trempealeau Cnty. Envtl. & Land Use Cmty.*, 895 N.W.2d 368, 377–78 (Wis. 2017) ("The 'kept within its jurisdiction' inquiry on certiorari review considers whether the applicable ordinance grants [the government entity] the authority to take the action it took."). To the extent Plaintiff challenges the County Zoning Board's

_____

[6]The allegation that, on February 10, 2020, the Town Board exceeded its authority by adopting a new ordinance aimed at making it more difficult to obtain permits for gravel pits is a bit of a red herring, as the complaint does not allege that the Town held the Plaintiff to this ordinance. *See* (Docket #1 ¶ 31, #34-1 ¶ 51).

rejection of the petition because of soil reclamation concerns, Plaintiff overlooks the fact that insufficient soil reclamation is a serious cause for concern with nonmetallic mining sites. *See* Walworth Cnty. Ord. art. VI, § 26-292 (a)(2)b (requiring approved reclamation plans for nonmetallic mines and ordering that "[l]and used for nonmetallic mineral extraction in areas zoned under an exclusive agricultural use ordinance . . . shall be restored to agricultural use."). Plaintiff has not pointed to any law to which any defendant acted contrary, nor has Plaintiff otherwise alleged any other bases for the Court to examine whether any defendant acted beyond the scope of its jurisdiction.

As for whether any defendant's action was arbitrary or contrary to law, the discussion in Section 3.1, *supra*, demonstrates that Plaintiff has not even remotely alleged that any defendant acted arbitrarily or illegally. As for the question of whether any of the governing bodies appropriately considered the evidence before reaching their conclusion, the complaint contains ample allegations that the governing bodies were in receipt of considerable information regarding the proposed pits (not only the complete rezoning petition and the CUP application, but soil reclamation plans and 22 pages of additional information, on top of the presentations that ACI had made at public meetings, as well as oppositional testimony and materials). It was up to the governing bodies to determine what weight to accord what information. *Oneida*, 865 N.W.2d at 172.

Plaintiff has not suitably alleged a claim for certiorari relief, and, based on the facts in the amended complaint and the law as it currently exists, it does not appear that Plaintiff could. This claim will be dismissed with prejudice.

4.    **CONCLUSION**

The facts alleged in Plaintiff's complaints do not amount to a constitutional violation. This should come as no surprise: "[f]ederal courts are not boards of zoning appeals." *Highland Park*, 23 F.3d at 165. Indeed, the Seventh Circuit has counseled parties to carefully study its prior decisions on zoning before commencing a lawsuit in federal court. *Harding v. County of Door*, 870 F.2d 430, 431–32 (7th Cir. 1989) (recommending *Coniston Corp.*, 844 F.2d 461). To the extent that they remain viable, Plaintiff may attempt to litigate its Wisconsin constitutional claims in state court.

Accordingly,

**IT IS ORDERED** that Plaintiff's first motion for leave to file an amended complaint (Docket #34) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motions for judgment on the pleadings (Docket #23, #32) be and the same are hereby **GRANTED as stated in the terms of this Order**;

**IT IS FURTHER ORDERED** that the motion to stay discovery (Docket #27) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's claims pursuant to the U.S. Constitution and for certiorari review in the complaint (Docket #1) be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law constitutional claims raised in the complaint (Docket #1) and Plaintiff's state law constitutional claims be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 21st day of March, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge